FILED
BILLINGS DIV.

2008 MAR 21 AM 8 16

PATRICK E. DUFFY, CLERK

BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION

| | |
|---|---|
| NORTHWESTERN CORPORATION, d/b/a NORTHWESTERN ENERGY, <br><br> Plaintiff, <br><br> vs. <br><br> ECONOMIC RESEARCH GROUP, INCORPORATED, <br><br> Defendant. | **CV-08-04-BU-RFC-CSO** <br><br> **FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

Plaintiff NorthWestern Corporation, d/b/a NorthWestern Energy ("NorthWestern") initiated this action against Defendant Economic Research Group, Incorporated ("ERS")[1] in state court seeking declaratory and other relief for damages NorthWestern allegedly sustained resulting from a services contract between the parties. *Cmplt.* attached to *Notice of Removal* (Court's Doc. No. 1).[2] ERS, invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332, removed the case on January 29, 2008. *Notice of Removal* at 1-2.

---

[1] Defendant represents that its real name is Economic Research Services, Inc.  Thus, the Court refers to it herein as "ERS."

[2] Another action involving the same contract and the same parties also is pending in this Court before Chief Judge Cebull.  See Economic Research Services, Inc. v. NorthWestern Corp., CV 08-02-BU-RFC.

-1-

Now pending is ERS's Motion to Dismiss (Court's Doc. No. 3) brought under Rule 12(b)(6).[3]  Having reviewed the record, together with the parties' arguments in support of their respective positions, the Court issues the following Findings and Recommendation.

## I.   *BACKGROUND*

In its Complaint, NorthWestern alleges:

NorthWestern is "a franchised public utility" that supplies electric and natural gas service to more than 300,000 customers in Montana.  It gets its electric and natural gas supply from suppliers in Montana, the Pacific Northwest, and Canada using various procurement methods including "bi-lateral negotiations and requests for proposals." *Cmplt. at ¶¶ 6-8.*

In 2006, NorthWestern "sought to undertake an auction for energy supply to stimulate competition amongst suppliers and obtain attractive pricing." *Id. at ¶ 9.* NorthWestern sought auction consultants that could design, administer, and perform all aspects of an energy auction.  ERS submitted a proposal to NorthWestern that identified its key personnel and described the company's experience, expertise, and services.  ERS's proposal also stated that ERS would provide "the auction design, rules, bidder materials, and necessary software for conducting an energy auction." *Id. at ¶¶ 10-12.*

ERS provided NorthWestern with a preliminary estimate for the auction of

---

[3]All references to rules herein are to the Federal Rules of Civil Procedure unless otherwise indicated.

$25,000 to $30,000. NorthWestern entered into negotiations with ERS and ultimately entered into a "Consulting Services Agreement" ("Agreement") effective May 10, 2006, under which ERS was to design, execute, manage, and provide all necessary software to conduct an auction. *Id. at ¶¶ 13-16.*

Northwestern agreed to pay ERS on an hourly-fee basis including travel and other business expenses. ERS was to presubmit to NorthWestern for authorization, however, any business expenses in excess of $500 before incurring the expense. *Id. at ¶ 17.*

In July, August, and September of 2006, NorthWestern received invoices totaling $187,996.98 for services by ERS that included "an appearance at the Montana Public Service [Commission], creating auction rules and procedures, set-up of the auction website[,]" and "customization of software." *Id. at ¶¶ 18-20.* Northwestern timely paid the total amount of $187,996.98 "agreeing that most of the invoices were for services outside of the original contractual agreement." *Id. at ¶ 21.*

In October of 2006, "ERS conducted a live, real time 'Practice Auction' for qualified bidders. ERS assigned each qualified bidder with a user I.D. and password for the auction website, took bids, and otherwise performed all the functions of an auction." *Id. at ¶¶ 22-23.*

NorthWestern believed that the software that ERS used for the practice auction was "complete, without material defect, performed sufficiently, and was the package to be implemented in the 'real auction' slated for November 14, 2006." *Id. at ¶ 24.*

-3-

In early November 2006, ERS's agent informed NorthWestern that "separate service and licensing agreement with a third party, Auction Technologies, Inc. would be required to perform the auction." *Id. at ¶ 25.* NorthWestern then demanded that ERS perform its obligations under the parties' Agreement and provide the software and other materials necessary to perform the auction slated for November 14, 2006. ERS made appropriate arrangements and the auction was held on November 14, 2006. *Id. at ¶¶ 26-27.*

In late October 2006, ERS billed NorthWestern $195,042 for services rendered in September 2006. In late November 2006, ERS billed NorthWestern $231,221 for services rendered in October 2006. In February 2007, ERS billed NorthWestern $51,805.01 for services rendered from November 2006 to January 2007. *Id. at ¶¶ 28-30.* Such charges "include significant charges for software development, design, preparation, and testing." *Id. at ¶ 31.*

NorthWestern challenged the amounts ERS billed it for software because ERS and its agents had represented that the software needed to conduct the auction already existed and could be used for the auction with minimal adjustments or modifications. NorthWestern also believed, because of representations made by ERS and its agents, that the software and associated materials used for the practice auction were complete, without defect, and would be used in the real auction set for November 14, 2006. ERS has not provided NorthWestern with any justification for the amounts it has billed NorthWestern for the period from September 2006 through January 2007.

-4-

*Id. at ¶¶ 32-34.*

NorthWestern filed this action in state court on January 3, 2008, raising claims for:  a declaratory judgment that NorthWestern has fully paid for ERS's services rendered under the terms of the parties' Agreement (Count I); breach of contract (Count II); breach of the covenant of good faith and fair dealing (Count III); negligent misrepresentation (Count IV); deceit (Count V); actual fraud (Count VI); constructive fraud (Count VII); and punitive damages (Count VIII).  *Id. at ¶¶ 35-65*.

On January 29, 2008, ERS filed its motion to dismiss.

## II.    *THE PARTIES' ARGUMENTS*

ERS urges the Court to dismiss NorthWestern's entire Complaint, with prejudice, for failure to state a claim upon which relief can be granted.  ERS argues that each individual count in the Complaint must be dismissed, with prejudice, for the following reasons:

(1) Count I for declaratory relief fails because the parol evidence rule and the Agreement's merger clause prevent NorthWestern from attempting to modify the contract to justify the relief it seeks, *Deft's Br. in Support of Mtn. to Dismiss* ("*Deft's Br.*") (Court's Doc. No. 4) *at 5-7*;

(2) Count II fails because NorthWestern has not provided factual allegations sufficient to raise a right to relief for breach of contract, *id. at 7-8*;

(3) Count III fails because no special relationship existed between NorthWestern and ERS that would give rise to a breach of the covenant of good faith and fair dealing,

and because NorthWestern has failed to allege that ERS acted dishonestly or outside reasonable commercial standards of fair dealing, *id. at 8-11*;

(4) Count IV fails because NorthWestern has not alleged that ERS made an untrue representation as to a past or existing material fact to give rise to a claim for negligent misrepresentation, *id. at 11-13*;

(5) Counts V and VI fail because NorthWestern failed to plead the circumstances of the alleged deceit and fraud with particularity, *id. at 14-15*;

(6) Count VII fails because NorthWestern failed to allege that it actually was misled to its prejudice sufficiently to state a claim for constructive fraud, but rather alleged only that ERS attempted to profit for work that NorthWestern believes was not completed, *id. at 15*; and

(7) Count VIII for punitive damages fails because such a claim requires a finding of actual damages, which cannot be found here, and because a claim for punitive damages does not constitute a separate and independent cause of action, *id. at 17*.

In response, NorthWestern argues that ERS has mis-characterized material allegations in the Complaint to its advantage. *Pltf's Resp. to Deft's Mtn. to Dismiss* ("*Pltf's Resp.*") (Court's Doc. No. 6) *at 3*. When the allegations are viewed in the light most favorable to it, NorthWestern argues, the allegations are sufficient with respect to each count "to put ERS on notice of the claims against it and that those claims are plausible." *Id*. NorthWestern argues that, for each claim set forth in the Complaint, it has "set forth in a short and plain statement each of the legal and factual grounds that

-6-

support its claim for relief." *Id. at 3-4.* It argues that its Complaint "is consistent with the pleading requirements of Rule 8(a) in that it plainly sets out a plausible claim for relief for each of the counts supported by material allegations." *Id. at 4.*

In reply, ERS argues that NorthWestern's response "virtually ignor[ed] the substance of ERS's arguments on the merits of the several 'claims' set out in the Complaint" and did "not even mention or raise seven of the eight claims sought to be dismissed from this action." *Deft's Reply Br. in Support of Mtn. to Dismiss ("ERS's Reply")* (Court's Doc. No. 8) *at 1-2.* ERS again argues that the Court must dismiss the Complaint for failing to meet pleading requirements. *Id. at 2-5.*

## III.  *LEGAL STANDARD*

Dismissal is appropriate under Rule 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted." When considering a motion to dismiss under Rule 12(b)(6), "the court must construe the complaint in the light most favorable to the plaintiff, taking all her allegations as true and drawing all reasonable inferences from the complaint in her favor." Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005). Thus, a court must assume the facts alleged in the complaint to be true unless the allegations are controverted by exhibits attached to the complaint, matters subject to judicial notice, or documents necessarily relied on by the complaint and whose authenticity no party questions. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

"A complaint need not contain detailed factual allegations; rather, it must plead

'enough facts to state a claim to relief that is plausible on its face.'" <u>Weber v.
Department of Veterans Affairs</u>, 512 F.3d 1178, 1181 (9th Cir. 2008) (quoting <u>Bell
Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1974 (2007)).  Dismissal should be with
leave to amend unless it is clear that amendment could not possibly cure the
complaint's deficiencies.  <u>Steckman v. Hart Brewing, Inc.</u>, 143 F.3d 1293, 1296 (9th Cir.
1998).

### III.   *DISCUSSION*

#### A.   *Count I – Declaratory Relief*

ERS relies upon Montana's parol evidence rule and the merger clause in the
parties' Agreement to show that NorthWestern is precluded from now attempting to
modify the Agreement's terms.  The Court will recommend that ERS's motion be denied
with respect to Count I for two principal reasons.

First, section 28-2-905, M.C.A., generally precludes the introduction of extrinsic
evidence with respect to a written agreement.  The statute contains exceptions to the
general rule, however.  Subsection (2) of section 28-2-905, for instance, provides:

> This section does not exclude other evidence of the circumstances under
> which the agreement was made or to which it relates ... or other evidence
> ... to establish illegality or fraud.

Mont. Code Ann. § 28-2-905(2) (2007).

Here, NorthWestern has alleged deceit, actual fraud, and constructive fraud by
ERS.  *Cmplt. at ¶¶ 52-64.*  Such allegations may fall within the foregoing exceptions to
the general rule precluding introduction of extrinsic evidence.  Thus, Count I's dismissal

based on parol evidence's inadmissibility is not appropriate.[4]

Second, by arguing for dismissal of Count I based on the parol evidence rule and the Agreement's merger clause, ERS is invoking defenses.  Invocation of defenses in a motion to dismiss under Rule 12(b)(6), unless a plaintiff has admitted in its complaint "all the ingredients of an impenetrable defense[,]" does not support dismissal because "plaintiffs need not anticipate and attempt to plead around all potential defenses. Complaints need not contain *any* information about defenses and may not be dismissed for that omission."  Xechem, Inc. v. Bristol-Myers Squibb Co., 372 F.3d 899, 901 (7th Cir. 2004) (citing, *inter alia*, Gomez v. Toledo, 446 U.S. 635 (1980)) (emphasis in original).  Here, as already noted, ERS has not demonstrated that NorthWestern has set forth in its Complaint "all the ingredients of an impenetrable defense" to Count I.

For the foregoing reasons, the Court will recommend that ERS's motion to dismiss Count I be denied.

### B.   *Counts II, III, and IV - Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, and Negligent Misrepresentation*

ERS argues NorthWestern's Complaint lacks sufficient factual allegations with respect to Counts II, III, and IV to survive its Rule 12(b)(6) motion.  ERS's argument necessarily implicates Rule 8(a), which sets forth the procedural requirements for pleading a claim in federal court.

---

[4]Although the Court recommends *infra* that ERS's motion to dismiss be granted with respect to NorthWestern's deceit and actual fraud claims, the Court also recommends that dismissal be without prejudice and that NorthWestern be afforded the opportunity to amend its Complaint with respect to these claims.

Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8 "mean[s] what it sa[ys]." Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993).  Also, Rule 8(e) provides that "[p]leadings must be construed so as to do justice."

"The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim."  Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997) (citations omitted).  In evaluating a complaint's sufficiency, the Court's role "is necessarily a limited one," i.e., to evaluate "not whether a plaintiff will ultimately prevail," but rather to decide "whether [a plaintiff] is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds, Harlow v. Fitzgerald, 457 U.S. 800 (1982); see also Swierkiewicz v. Sorema, N.A, 534 U.S. 506, 511-14 (2002) (noting that Rule 8's "simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.").

When NorthWestern's Complaint is "construed so as to do justice" under Rule 8(e), and when all reasonable inferences are drawn in NorthWestern's favor from the factual allegations supporting the claims in Counts II, III, and IV, the Court concludes that NorthWestern has stated claims for which relief can be granted.

Again, NorthWestern alleges that ERS billed it for services rendered from

-10-

September 2006 to January 2007 for such things as software development, design, preparation, and testing.  NorthWestern alleges, *inter alia*, that:  it believed that ERS had already performed these services and would not have to perform them again; ERS knew or should have known the actual cost of performing the auction and failed to inform NorthWestern; ERS had a special relationship with NorthWestern by virtue of the Agreement between them and breached NorthWestern's reasonable expectations under the Agreement; ERS, which knew or should have known them to be false, made representations to NorthWestern as to material facts about its ability to perform the Auction and NorthWestern relied to its detriment on those representations; and ERS provided no justification for the amounts billed for the time from September 2006 to January 2007.  See *Cmplt. at ¶¶ 28-34, 43-46, 48-50.*

When one reads these allegations together with all other allegations in the Complaint, and when one draws all reasonable inferences from them, the Court concludes that NorthWestern has stated claims for which relief can be granted for breach of contract, breach of the covenant of good faith and fair dealing, and negligent misrepresentation.  Thus, ERS's motion to dismiss these claims should be denied.

### C.    *Counts V and VI - Deceit and Actual Fraud*

ERS argues that NorthWestern has failed in its Complaint to state with particularity the circumstances of ERS's alleged deceit and actual fraud.  *Deft's Br. at 14-15.*  The Court agrees.

Rule 9(b) requires parties alleging fraud or mistake to "state with particularity

-11-

the circumstances constituting fraud or mistake."  In diversity cases, such as this one,

state law determines the substantive elements of fraud, but the party asserting fraud

must plead those elements with particularity as required by Rule 9(b) of the federal civil

procedure rules.  Vess v. Ciba-Geigy Corp., 317 F.3d 1097, 1102-03 (9th Cir. 2003)

(citations omitted).

"Rule 9(b) ensures that allegations of fraud are specific enough to give

defendants notice of the particular misconduct which is alleged to constitute the fraud

charged so that they can defend against the charge and not just deny that they have

done anything wrong."  Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985).  In

cases in which "fraud is not an essential element of a claim, ... allegations ... of

fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b)"

because such claims are said to be "grounded in fraud" or to "sound in fraud."  Vess,

317 F.3d at 1103-05 (citations omitted).

Montana law describes the cause of action of deceit as follows:

**Liability for damages for deceit.**  (1)  One who willfully deceives
another with intent to induce him to alter his position to his injury or risk
is liable for any damage which he thereby suffers.

(2) A deceit, within the meaning of subsection (1), is either:

(a) the suggestion as a fact of that which is not true by one
who does not believe it to be true;

(b) the assertion as a fact of that which is not true by one
who has no reasonable ground for believing it to be true;

© the suppression of a fact by one who is bound to disclose
it or who gives information of other facts which are likely to
mislead for want of communication of that fact; or

-12-

(d) a promise made without any intention of performing it.

M.C.A. 27-1-712 (2007).

> Actual fraud under Montana law is comprised of the following nine elements:
>
> (1) a representation; (2) the falsity of that representation; (3) the materiality of the representation; (4) the speaker's knowledge of the representation's falsity or ignorance of its truth; (5) the speaker's intent that the representation should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the representation's falsity; (7) the hearer's reliance upon the truth of the representation; (8) the hearer's right to rely upon the representation; and (9) the hearer's consequent and proximate injury or damages caused by their reliance on the representation.

In Re Estate of Kindsfather, 2005 MT 51, ¶17, 326 Mont. 192, ¶17, 108 P.3d 487, ¶17 (citing State ex rel Ins. Fund. v. Berg, 279 Mont. 161, 175, 927 P.2d 975, 983 (1996)).

As an initial matter, the foregoing description of deceit demonstrates that it is a claim essentially grounded in fraud or sounding in fraud such that Rule 9(b)'s heightened pleading requirement applies to it.  See Vess, 317 F.3d at 1103-05.  Thus, the Court will analyze both causes of action under Rule 9(b)'s requirement.

NorthWestern has attempted to state claims for deceit and actual fraud merely by reciting the elements of each cause of action.  *Cmplt. at ¶¶ 53-54, 56-61*.  This is not sufficient.  Rather, NorthWestern is required to provide particular facts concerning the "time, place, persons, statements made, [and] explanation of why or how [ERS's] representations or] ... statements are false or misleading."  In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1547-48 n.7 (9th Cir. 1994) (*en banc*) (*superseded on other grounds by 15 U.S.C. § 78u-4*). "[M]ere conclusory allegations of fraud are insufficient."

-13-

Id. at 1548 (citation omitted).

Thus, to the extent ERS's motion to dismiss relates to NorthWestern's claims of deceit and actual fraud, it should be granted, without prejudice, and NorthWestern should be afforded an opportunity to amend its Complaint.

### D.   *Count VII - Constructive Fraud*

ERS argues that NorthWestern has failed to state a claim for constructive fraud because it alleges that ERS only "attempted to profit" and that NorthWestern has not alleged that it was actually misled to its prejudice. *Deft's Br. at 15*. The Court disagrees.

"Conduct constituting constructive fraud consists of 'any breach of duty, which, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under him by misleading another to his prejudice....'" In re Potts, 158 P.3d 418, 528-29 (Mont. 2007) (quoting M.C.A. § 28-2-406).

NorthWestern alleges that ERS, through its alleged "conduct and breaches, ... attempted to profit for work NorthWestern believes upon information, was not completed to NorthWestern's prejudice" and that NorthWestern "has been damaged[.]" *Cmplt. at ¶¶ 63-64*. By alleging that ERS breached its duties under the Agreement by which ERS gained an advantage to NorthWestern's prejudice, NorthWestern has stated a claim for constructive fraud. Also, NorthWestern has neither alleged nor argued that ERS's "attempt[] to profit" was the sole reason that NorthWestern allegedly suffered prejudice and damages. When reading NorthWestern's allegations with respect to its

-14-

constructive fraud claim together with all other allegations in the Complaint, and when drawing all reasonable inferences from them, one could conclude that NorthWestern suffered other prejudice or damages as a result of ERS's alleged actions. Thus, the Court concludes that NorthWestern has stated a claim for which relief can be granted for constructive fraud. ERS's motion to dismiss this claim, therefore, should be denied.

### E. *Count VIII - Punitive Damages*

ERS argues that, under Montana law, "there must first be a finding of actual damages before an award of exemplary damages can be proper" and "a claim for punitive damages can only be presented as an adjunct to an actual damages claim." *Deft's Br. at 16*. Also, ERS argues that "there can be no cause of action for punitive damages standing alone." *Id*. Because all of NorthWestern's other claims must be dismissed as a matter of law, ERS argues, there is no actual damage claim left to support NorthWestern's claim for punitive damages. *Id. at 17*.

As noted in the discussion *supra*, the Court does not recommend dismissal under Rule 12(b)(6) of all of NorthWestern's claims. Also, for those claims for which the Court recommends dismissal, the Court also recommends that NorthWestern be permitted to amend its Complaint. Thus, it would be premature at this juncture in the proceedings to foreclose NorthWestern's claim of entitlement to punitive damages. ERS's motion to dismiss NorthWestern's request for punitive damages, therefore, should be denied.

### IV. *CONCLUSION*

Based on the foregoing,

-15-

**IT IS RECOMMENDED** that ERS's Motion to Dismiss (Court's Doc. No. 3) be GRANTED, without prejudice, in part, and DENIED, in part, as set forth herein. NorthWestern should be afforded the opportunity to amend its Complaint as indicated.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Order and Findings and Recommendation of the United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendation portion must be filed with the Clerk of Court and copies served on opposing counsel within ten (10) days after receipt hereof, or objection is waived.

DATED this 21st day of March, 2008.

Carolyn S. Ostby
United States Magistrate Judge

-16-